H. C. VICKERS, Ward E. Guin, John Ruan, Howard Hall, Roy Fruehauf, and Harper Oil Company, Plaintiffs in Error,

v.

Augusta West VINING, Patricia Jean West Vincent, Leota West Reno, Stanley F. Alcott, Joan Alcott Buckley, Patricia Alcott Sullivan, Mrs. J. L. West, and Bertha B. Harrison, Defendants in Error.

No. 42593.

Supreme Court of Oklahoma.

April 8, 1969.

T. Murray Robinson, and David G. Probst, of Robinson, Robertson & Barnes, Oklahoma City, for plaintiffs in error.

Robert M. Murphy, Stillwater, for defendants in error.

WILLIAMS, Justice.

This is an appeal from a judgment of the trial court cancelling an oil and gas lease, or, in the alternative, requiring defendants below, owners of the working interest in the lease, to drill an additional well on the leased property, or, to pay plaintiffs, owners of all the surface and mineral interest therein, offset royalties.

On appeal, the parties will be referred to as they appeared in the trial court.

In 1954 and 1955, plaintiffs executed oil and gas leases covering the Southeast Quarter of Section 20, Township 14 North, Range 8 East, Creek County, Oklahoma, to one of the defendants herein, H. C. Vickers. These leases were subsequently assigned to another one of the defendants, Harper Oil Co. The other named defendants thereafter became owners of various fractional interests in these oil and gas leases.

In October, 1956, Harper Oil Co. commenced, within the primary term of the oil and gas leases, a well on the NW/4 of the SE/4 of plaintiffs' quarter section. This well, known as the West No. 1 well, was completed in the Skinner Sand formation with oil production. In November, 1956, Harper commenced a well in the NE/4 of Section 20, which property was not owned by plaintiffs. This well was drilled to the Skinner Sand and resulted in a dry hole.

In April, 1963, A. L. Smith (not a party to this action) commenced a well on the N/2 of Section 29 on a location directly offsetting plaintiffs' property. This well was completed in the Skinner Sand with oil production. Smith thereafter drilled two other wells in the N/2 of Section 29 and one well in the SW/4 of Section 20. All of these wells were direct offsets to plaintiffs' property and all were completed in the Skinner Sand as producers.

After Smith had completed three of his four wells, defendants commenced the drilling of a well on the SW/4 of the SW/4 of plaintiffs' property. This well, known as the West No. 2, was a direct offset to one of the Smith wells and a diagonal offset to the other two. The West No. 2 was drilled to the Skinner Sand and was completed as a dry hole.

The locations of the two wells drilled on plaintiffs' property (SE/4 of Section 20) and of the wells drilled on adjacent prop-

erty by Smith, the dates each of such wells were commenced and the depths to which they were drilled, are illustrated by the following plat.

It should be noted that the Oklahoma Corporation Commission established 40-acre drilling and spacing units, with each permitted well to be located in the center square 10 acres of each unit, for the Skinner Sand underlying the N/2 of Section 29 and the SW/4 of Section 20. The four wells drilled by A. L. Smith were in accordance with this spacing pattern. However, plaintiffs' property has not been spaced and therefore the applicable drilling and spacing units in effect for the SE/4 of Section 20 are 10-acre units as provided for in § 202 of the Oklahoma Corporation Commission's General Well Spacing Regulations.

In December, 1965, plaintiffs (with the exception of one) made demand on defendants for further development, stating that if this demand were refused, plaintiffs would seek cancellation of the lease covering their property except as to the 10 acres surrounding the West No. 1 well. Defendants refused this demand, stating that "(W)e do not know of any drainage which is occurring and presently we do not have enough geological information to indicate to us where another commercial well might be drilled on the tract." All plaintiffs joined in a similar second demand made on defendants in April, 1966. This second demand was also refused by defendants.

Subsequent to defendants' second refusal to further develop, plaintiffs instituted their action below, alleging therein that the offsetting wells were draining oil underlying their property and that defendants refusal to drill additional wells on the leased property was a breach of the implied covenant of further development. Plaintiffs requested defendants' oil and gas lease be cancelled except as to 10 acres surrounding the West No. 1 well.

In their answer, defendants alleged that plaintiffs' property adjacent to the offset wells drilled by A. L. Smith was not underlain by oil as shown by the West No. 2 well being completed as a dry hole; that there had been no appreciable drainage from formations underlying plaintiffs' property; and, that defendants had acted with reasonable diligence and prudence in the development of the property.

At the trial below, plaintiffs introduced the testimony of a petroleum engineer to the effect that the producing wells offsetting plaintiffs' property were draining oil from the Skinner Sand formation underlying plaintiffs' lands. He further expressed the opinion that a profitable well could be drilled in the SW/4 of plaintiffs' property.

For defendants, an officer of Harper Oil Co. testified that the West No. 1 was just beginning to show a profit after approximately ten years of production. He admitted that 40-acre spacing had not been extended to the SE/4 of Section 20, but stated that defendants had recognized the possibility of an extension of this spacing pattern in the event their West No. 2 had been productive and therefore had located such well accordingly.

Defendants' geologist testified that from the drill stem test and the examination of the core samples taken from the West No. 2 well it was his opinion this well was not productive from the Skinner Sand. He stated that it was possible a commercial well could be drilled in the SW/4 of plaintiffs' property but that he would not recommend this because of the erratic nature of the Skinner Sand. He also stated that in all probability, producing wells could be drilled in the SE/4 of plaintiffs' property. On cross examination, this witness admitted that the lease on plaintiffs' lands was being held for speculative purposes for the possible future development of deeper horizons. He also admitted that defendants had no present plans for such development.

At the conclusion of the trial, judgment was entered for plaintiffs. As indicated above, this judgment was in the alternative and contained three options. These were

(a) that defendants release all of plaintiffs' property except 10 acres immediately surrounding the West No. 1 well; or (b) that defendants pay off-set royalties based upon the two wells located in the N/2 of the NE/4 of Section 29; or (c) that defendants drill another well on plaintiffs' property within 120 days.

From this judgment and an order overruling their motion for new trial, defendants appeal.

In their first proposition for reversal, defendants contend that the court erred in overruling their demurrer to plaintiffs' amended petition. The basis of this contention is that although plaintiffs alleged defendants' breach of the implied covenant to further develop, they were required also to allege that defendants could drill additional wells with a reasonable expectation that such wells would result in a profit to defendants.

■ Plaintiffs' petition herein alleges that defendants have drilled only two wells, one productive and one dry, on the leased property; that four wells producing from the same formation as plaintiffs' well have been drilled on locations immediately offsetting plaintiffs' property to the West and South; that the offsetting wells are draining hydrocarbons underlying plaintiffs' lands; that although two demands have been made defendants have refused to drill additional wells; and, that this refusal is a breach of the implied covenant of further development. In our opinion, this petition alleged facts sufficient to entitle plaintiffs to relief and the trial court did not err in overruling defendants' demurrer.

■ Defendants also contend that the trial court erred in overruling their demurrer to plaintiffs' evidence. In reviewing this ruling of the trial court we shall consider all the evidence as a whole and not just that submitted by plaintiffs. A. O. Smith Harvestone Products, Inc. v. Griffith, Okl., 428 P.2d 314. Therefore, this contention of error will be combined with

defendants' allegation that the evidence below failed to establish that they breached the implied covenant to further develop.

■ Defendants, in effect, argue that there is no implied obligation on the part of a lessee to drill an offset well to a well on adjoining premises or to drill an additional one on the leased premises except where the drilling of such well would probably result in the production of sufficient oil to repay the cost of drilling, equipping, and operating such well. This is the applicable rule as we announced in Spiller v. Massey & Moore, Okl., 406 P.2d 467. Relying on this test announced in *Spiller*, defendants contend that the evidence herein does not support any finding that a profitable well could be drilled on the leased premises.

■ From the earlier summary of the testimony of plaintiffs' and defendants' expert witnesses, it is clear that both were of the opinion that profitable wells could be probably or possibly drilled in the S/2 of the leased property. In their testimony, both witnesses expressed their views as to the costs of drilling, equipping and operating a well and it must be presumed they expressed their opinions as to the profitability of prospective wells with such costs in mind. In our opinion, this evidence was sufficient to meet the test stated in Spiller v. Massey & Moore, supra.

Defendants' third proposition contends that the trial judge erred in taking judicial notice of or in drawing certain conclusions from certain matter not in the record. This alleged error occurred when the trial judge stated that he would take judicial notice that the area in which plaintiffs' property was located had been drilled historically on 10-acre spacing. This statement came in a colloquy with defendants' counsel wherein the latter was insisting that 10-acre spacing was not applicable to the leased property.

■ In our view, such remarks, even if presumed to be error, were not prejudicial.

Defendants both admitted and stipulated to the fact that the SE/4 of Section 20 had not been spaced on 40-acre patterns. As we noted above, in absence of a specific spacing order, this property is subject to 10-acre spacing and drilling units under § 202, Oklahoma Corporation Commission's General Well Spacing Regulations. The trial judge's remarks indicate that he was aware that 10-acre spacing was applicable to plaintiffs' property, and when placed in context of his oral pronouncement of judgment immediately following such remarks, make it clear that his judgment was in part based upon the fact that defendants had two permitted well locations as direct offsets to wells producing on property adjacent to that of plaintiffs.

Actions to cancel oil and gas leases are equitable in nature, and if the evidence submitted fairly establishes a breach by a lessee of the implied covenant to further develop, a court of equity may grant the relief necessary in the particular case. See Shell Oil Co. v. Howell, 208 Okl. 598, 258 P.2d 661; and Crocker v. Humble Oil & Refining Co., Okl., 419 P.2d 265.

In our opinion, the judgment of the trial court below finding that defendants had failed to discharge as a reasonable and prudent operator their implied obligation to further develop and granting plaintiffs alternative relief is not clearly against the weight of the evidence.

In our view, the trial court should grant the defendants the 120 day period specified in its judgment within which defendants may commence compliance with one or another of the alternatives required by that judgment as herein affirmed, next following finality of judgment.

The judgment of the trial court is affirmed.

BERRY, V. C. J., and DAVISON, BLACKBIRD, JACKSON, HODGES and LAVENDER, JJ., concur.

IRWIN, C. J., and McINERNEY, J., concur in result.